IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KIMBERLY JO ARCURI, | ) CASE NO. 4:09 CV 1988 |
| ) | |
| Plaintiff, | ) |
| ) | MAGISTRATE JUDGE |
| v. | ) WILLIAM H. BAUGHMAN, JR. |
| ) | |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) **MEMORANDUM OPINION AND** |
| ) | **ORDER** |
| Defendant. | ) |

## Introduction

Before me[1] is an action for judicial review of the final decision of the Commissioner of Social Security denying the applications of the plaintiff, Kimberly Jo Arcuri, for disability insurance benefits and supplemental security income.[2] The Commissioner, in response, seeks affirmation of that decision.[3] The parties have briefed their respective positions[4] and participated in a telephonic oral argument on this matter.[5]

For the reasons that follow, the Commissioner's decision will be affirmed.

---

[1] ECF # 21.  The parties have consented to my jurisdiction.

[2] ECF # 2.

[3] ECF # 13.

[4] ECF # 25 (Commissioner's brief); ECF # 28 (Arcuri's brief).

[5] ECF # 30.

**Facts**

**A.     Background**

This is case involves a decision to terminate benefits.  Essentially, the ALJ found that Arcuri's impairment, for which she had previously been found disabled, had improved to such an extent that she now has the residual functional capacity to do her past relevant work or perform other jobs in the national economy.

In brief, Acuri was originally found disabled in 1998 from an organic mental disorder – a condition resulting from a brain aneurysm.[6]  Arcuri was found to still be disabled from the same condition in 2002.[7]  However, based on:  (1) the results of a consultative psychological examination in 2005; (2) a 2006 report by a state agency reviewing psychologist; (3) results from emergency room visits in 2006 and 2008; and (4) 2008 visits to a counselor and a psychiatrist; the ALJ concluded in 2009 that the impairment present in 2002 had decreased in medical severity to the point that Arcuri was no longer disabled.[8]

---

[6] Transcript ("Tr.") at 11.

[7] *Id*. at 13.

[8] *Id*. at 14-17.

The ALJ in that 2009 decision further noted that although Arcuri had very recently been diagnosed with obsessive compulsive disorder,[9] that diagnosis did not meet the applicable listing.[10]

As to Arcuri's residual functional capacity (RFC), the ALJ found that she had the capacity to perform work at any exertional level, with the provision that such work be limited to "only simple, routine tasks with little decision making required."[11] As such, the ALJ determined that Arcuri could perform her past work as a cashier.[12] Alternatively, relying upon the testimony of a vocational expert (VE), the ALJ found that there were significant numbers of other jobs in the national economy available to Arcuri.[13]

**B.   The parties' positions**

Arcuri argues that substantial evidence does not support the Commissioner's decision to terminate benefits. To that end, she contends that contrary to the ALJ's finding, she has continued to experience the same symptoms she had when she was judged disabled.[14] In particular, she points to a CT scan taken in 2006 that she maintains does not show any

---

[9] The OCD diagnosis was from Arcuri's examining therapist in November, 2008. *See*, *id*. at 153-165. The ALJ's decision was made in February, 2009, or just some three months later. *Id*. at 18.

[10] *Id*. at 14.

[11] *Id*. at 15.

[12] *Id*. at 17.

[13] *Id*.

[14] ECF # 28 at 7.

improvement of her condition.[15] Further, she asserts that she has had persistent headaches affecting her vision since the surgery for the aneurysm, as well as sleep problems.[16]

While she acknowledges that there have been periods when she did not seek "formal mental health treatment," she contends that this failure to seek treatment is frequently a symptom of mental health problems, and does not of itself negate the evidence, cited above, that her "mental health problems and complaints" have been consistently asserted.[17] Moreover, she contends that the ALJ should have considered all the limiting factors – such as depression, right side swelling, pain, numbness and headaches – in assessing her residual functional capacity for work.[18]

The Commissioner, for his part, asserts that substantial evidence supports the finding that Arcuri's previously disabling impairment had improved sufficiently by December 2005 such that she could perform her prior relevant work.[19]

In this regard, the ALJ noted first that in 2002 when Arcuri's disability had been confirmed, the record showed "psychomotor retardation, poor sleep, blunted affect and anhedonia."[20] By contrast, the ALJ observed that the 2005 findings of the consultative

---

[15] *Id*. (citing transcript).

[16] *Id*. at 8-9.

[17] *Id*. at 10.

[18] *Id*. at 11.

[19] ECF # 25 at 8-11.

[20] Tr. at 14.

examining psychologist, Dr. J. Joseph Konieczny, established that Arcuri had "no psychosis associated with decompensation," and that her "mental status examination was within normal limits," with "no [mental] problems reported other than some difficulties with sleep, some mild depressive symptoms following the death of her father, and some mild memory problems."[21] The ALJ then pointedly noted that Dr. Konieczny's examination also found that Arcuri "showed good grooming and hygiene, good communication skills, adequate cognition, insight and judgment, and [was] completely independent and functional [in] activities of daily life."[22]

Therefore, in light of Arcuri's "performance at the [2005] mental status examination and her reported independent and appropriate function in spite of her history of brain aneurysm and related surgical repair," the ALJ had sufficient evidence to conclude that Arcuri's "mild residual symptoms" did not meet the listing for organic mental disorder that she previously had met, but would allow her to do competitive work involving only simple routine tasks with little decision making required.

The ALJ further took note of Arcuri's complaints of pain, numbness, swelling, and headaches but determined that Arcuri's "statements concerning the intensity, persistence, and limiting effect of these symptoms are not credible" since: (1) her functioning, as described in Dr. Konieczny's report, is "not significantly restricted;" (2) from December 2005 to November 2008 Arcuri received no mental health treatment; (3) she has continued to smoke

---

[21] *Id.*

[22] *Id.* at 14-15.

despite medical advice to quit; and (4) there is no support in the medical findings for Arcuri's claims.[23]  In this respect, the ALJ cited to normal physical examination findings, such as: (1) no sensory or motor deficits; (2) all joints described as non-tender with a full range of motion; (3) normal lungs and cardiac testing; and (4) a CT scan showing "evidence of the prior repair with no acute changes."[24]

In addition, the ALJ noted that, while Arcuri has had no mental health treatment related to her history of the aneurysm, she "has very recently sought treatment for symptoms of depression and compulsions."[25]  That said, however, the ALJ found that these conditions were being addressed with "outpatient therapy and [a] low-dose anti-depressant," and so would not change the RFC finding.[26]

Finally, the ALJ stated that the consultative examination of Dr. Konieczny and the report of two state agency examiners agreed in concluding that Arcuri had no severe impairments.[27]  He further noted that the psychologist whom Arcuri had only recently begun to see did not provide any opinion as to Arcuri's residual functional capacity.[28]  Similarly,

---

[23] *Id*.

[24] *Id*. at 16.

[25] *Id*.

[26] *Id*. at 16-17.

[27] *Id*. at 17.

[28] *Id*.

the ALJ also stated that Arcuri's primary care physician likewise had no opinion in the record as to her RFC.[29]

Accordingly, the ALJ found that Arcuri's disability ended on December 1, 2005, and that her RFC would enable her to either perform her past relevant work or other jobs available in significant numbers within the national economy.[30]

## Analysis

### A.  Standard of review

As the Sixth Circuit has stated, review of the Commissioner's decisions "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards."[31] This standard requires the reviewing court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[32] This means that the Commissioner's decision must be affirmed if supported by substantial evidence even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence.[33] An ALJ's failure to follow agency rules and regulations

---

[29] *Id.*

[30] *Id.*

[31] *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (citation omitted).

[32] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted).

[33] *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007).

"denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record."[34]

**B.     Application of standard**

A recipient of disability benefits bears a continuing burden to show that she is disabled.[35] To that end, as described above, Arcuri was re-examined in 2005. On the basis of that examination, as well as other evidence, the ALJ determined that she was no longer disabled. I now review that decision under the rubric of substantial evidence.

As an overview, Arcuri essentially makes two arguments: (1) that "the substantial weight of the evidence" supports her view of the evidence and not the ALJ's; and (2) that the ALJ "erred" by failing to consider all the limitations arising from her various asserted conditions.[36]

With respect to Arcuri's argument that substantial evidence supports her position, I note first that this is not the standard of review. Rather, as detailed above, the reviewing court will affirm the Commissioner's decision when it is supported by substantial evidence. As such, "substantial evidence" has been characterized by the Sixth Circuit as more than a scintilla of evidence but less than a preponderance.[37] It is for the Commissioner and the ALJ,

---

[34] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (citation omitted).

[35] *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).

[36] ECF # 28 at 10-11.

[37] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

not the reviewing court, to weigh the evidence and determine credibility.[38] Indeed, it is well-settled that the decision of the Commissioner is expressly not reversible merely because there is evidence in the record to support a different conclusion.[39] In other words, substantial evidence could support both the position of the claimant and the position of the Commissioner; if so, the Commissioner wins.[40]

Here, as detailed earlier, substantial evidence exists in the record as a whole to support the decision of the Commissioner. While Arcuri would prefer that greater weight be given to her complaints of pain, depression, swelling, and numbness, the ALJ clearly noted those factors but found that: (1) Arcuri's assessment as to persistence and severity were not credible; (2) no medical evidence supported limitations in these respects; and (3) the findings of the consultative examiner – which were not contradicted by any other findings from treating, consulting, or examining sources – deserved greater weight. As such, the ALJ's conclusions are supported by substantial evidence, and I am not permitted to re-weigh that evidence to reach the result sought by Arcuri.

As regards Arcuri's argument that the ALJ "erred" in not considering limiting effects from the factors recited above, the ALJ did take note of those factors, but, as described, did not credit them to the extent now desired by Arcuri. As stated, determinations as to

---

[38] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (citations omitted).

[39] *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 839-40 (6th Cir. 2006).

[40] *Rogers*, 486 F.3d at 241; *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).

credibility and weight are properly the province of the ALJ. I note further, as previously discussed, that substantial evidence supports the findings of the ALJ as regards the ultimate conclusions arrived at from the record as a whole.[41]

## Conclusion

Therefore, for the reasons stated above, I find that substantial evidence supports the determination of the Commissioner that Arcuri's disability ended on December 1, 2005. Accordingly, the decision of the Commissioner is affirmed.

IT IS SO ORDERED.

Dated: October 20, 2011  s/ William H. Baughman, Jr.
United States Magistrate Judge

---

[41] In addition, to the extent that Arcuri's argument as to consideration of her OCD diagnosis may be read as a claim that this diagnosis should have been evaluated as a stand-alone claim of a new disability, I note, as more fully detailed above, that this diagnosis was approximately three months old at the time the ALJ rendered his decision. As such, it could not have been the basis for a finding of disability since any such disability must have lasted or be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). While the OCD had plainly not lasted 12 months at the time of the decision, there also was no evidence in the record to substantiate a finding that it would last for a continuous 12 months. Accordingly, this diagnosis on this record could not have independently supported a finding of a new disability.